UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JINGE WANG,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | Case No. 5:26-cv-05710-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On September 26, 2026, petitioner Jinge Wang ("Petitioner"), represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by an exhibit (Docket No. 1-2). The Petition alleges the following claims for habeas relief: (1) "Deprivation of Liberty Without Due Process of Law"; (2) "Continued Mandatory Detention has Become Arbitrary and Excessive in Relation to its Civil Purpose"; and (3) "Unlawful Executive Detention Cognizable Through the Writ of Habeas Corpus and the

Suspension Clause." (Docket No. 1 at 32-40).[1] Petitioner seeks, among other things, immediate release from custody or in the alternative, a prompt, individualized and constitutionally adequate bond hearing at which the government bears the burden of justifying Petitioner's continued detention by clear and convincing evidence. (Id. at 9, 52-55).

On October 5, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 8), accompanied by two exhibits (Docket Nos. 8-1 and 8-2). In the Answer, Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(A), as a noncitizen inadmissible for committing, being convicted of, or admitting the elements of a crime involving moral turpitude or an attempt/conspiracy to commit one. (Docket No. 8 at 2-4). In the Answer, Respondents also contend that Petitioner is not entitled to habeas relief on his due process claim: "To the extent Petitioner contends that the duration of his detention has rendered it constitutionally inform, the appropriate remedy is a Rodriguez[2]-style prolonged detention bond hearing—a remedy he will be eligible to receive once he has been detained for six months (180 days)." (Id. at 4).

On October 7, 2026, Petitioner filed a Reply to the Answer ("Reply"). (Docket No. 9).

On November 12, 2026 (pursuant to the Court's November 9, 2026 Order, see Docket No. 10), Petitioner filed a Status Report (Docket No. 11), accompanied by one exhibit (Docket No. 11-1).

/ / /

---

[1] For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

[2] Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), reversed by Jennings v. Rodriguez, 583 U.S. 281 (2018).

Although the Court also ordered Respondents to file a Status Report (see Docket No. 10), Respondents failed to do so.

On November 16, 2026, the Court, after identifying Petitioner's contention regarding why he is not subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A),[3] and after finding that Respondents in the Answer did not adequately address that contention, ordered Respondents to file a Supplemental Answer properly addressing that contention. (Docket No. 12).

However, Respondents did not file a Supplemental Answer, or request an extension of time to do so.

On November 24, 2026, Petitioner filed a pleading notifying the Court of Respondents' failure to file the ordered Supplemental Answer and requesting expedited adjudication of the Petition and immediate release. (Docket No. 13).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

---

[3] The Court identified Petitioner's contention as follows:

> In the Petition and Reply, Petitioner contends that, based on the fact that his grand theft felony conviction was reduced to a misdemeanor in January 2022 pursuant to California Penal Code § 17(b)(3), he qualifies for an express exception to inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I), specifically, 8 U.S.C. § 1182(a)(2)(A)(ii)(II) -- "Clause [1182(a)(2)(A)](i)(I)] "shall not apply to an alien who committed only one crime if" . . . "the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed)." -- and therefore is not subject to mandatory detention under Section 1226(c). (See Docket No. 1 at ¶¶ 7, 43 ["[Petitioner's] principal criminal-law argument rests on the independent January 22 § 17(b)(3) classification and the Ninth Circuit's treatment of that classification for purposes of the federal petty-offense exception."], 61-65; see Docket No. 9 at 2, 5-10).

(Docket No. 12 at 1).

## II.

## BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. (Docket No. 1 at ¶ 26; Docket No. 8 at 2; see Docket No. 8-1 at 1-2). Petitioner has been a lawful permanent resident of the United States ("LPR") since June 1, 2016. (Docket No. 1 at ¶¶ 1, 26, 34). From approximately July 2024 until May 27, 2026 (over 180 days), Petitioner was outside of the United States. (Id. at ¶¶ 10, 44).

On May 27, 2026, Petitioner arrived at Los Angeles International Airport on United Airlines flight 199 from Shanghai Pudong International Airport, Shanghai, China, and presented himself as a returning LPR. (Docket No. 1 at ¶ 1; Docket No. 8 at 2; see Docket No. 8-1 at 2). Petitioner was referred to the Admissibility Review Unit for further questions regarding his criminal history. (Docket No. 8 at 2; see Docket No. 8-1 at 2). During secondary inspection, system queries revealed that Petitioner was accorded LPR status on or about June 1, 2016, under the AS8 (Child of AS6) classification. (Docket No. 8 at 2-3; see Docket No. 8-1 at 2).

On October 7, 2019, in San Diego County Superior Court, Case No. SCD280903, Petitioner was convicted (pursuant to a plea) of one count of grand theft in violation of California Penal Code § 487(a) and one count of unauthorized use of personal identifying information ("identity theft") in violation of California Penal Code § 530.5(a). (Docket No. 1 at ¶ 37; see Docket No. 1-2 at 1; Docket No. 8 at 3; see Docket No. 8-1 at 2 ("Law enforcement records revealed that on or about October 7, 2019, [Petitioner] was convicted of a felony in the Superior Court of California County of San Diego for the offense of Grand Theft: Money/Labor/Prop, in violation of Penal Code 487(A).")). On that date, the Superior Court suspended imposition of sentence and ordered Petitioner to serve three years of formal probation and four days in jail and to pay $13,528.00 in restitution. (Docket No. 1 at ¶¶ 6, 38, 47, 65; see Docket No. 1-2 at 1-4; Docket No. 8 at 3). On November 9,

2021, the Superior Court granted Petitioner's petition to terminate probation, terminating probation "as a matter of law on October 6, 2021." (Docket No. 1-2 at 9-10; Docket No. 1 at ¶ 39). On January 31, 2022, the Superior Court granted Petitioner's motion to reduce both felonies to misdemeanors pursuant to California Penal Code § 17(b)(3)[4], and ordered the complaint amended. (Docket No. 1 at ¶¶ 6, 41; Docket No. 8 at 3; see Docket No. 1-2 at 11-12). On August 1, 2022, the Superior Court granted Petitioner's petition to dismiss his convictions pursuant to California Penal Code § 1203.4. (Docket No. 1 at ¶ 43; Docket No. 8 at 3; see Docket No. 1-2 at 12-13).

On June 3, 2026, Petitioner was served a Form I-862, Notice to Appear ("NTA"), charging Petitioner with inadmissibility under Immigration and Nationality Act ("INA") § 212(a)(1)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), based on his October 7, 2019 grand theft conviction. (Docket No. 1 at ¶ 46; Docket No. 8 at 3; see Docket No. 11-1).[5] The [Notice to Appear] characterizes Petitioner's grand theft conviction as a felony and alleges that Petitioner was sentenced to "44 months of prison, a $10,000 fine, and four years of parole or post-release community supervision." (Docket No. 1 at ¶¶ 4, 38, 46, 65; see Docket No. 11-1 at 1).

/ / /

---

[4] Cal. Penal Code § 17(b) provides, in pertinent part, that: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: . . . (3) When the court grants probation to a defendant and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

[5] Respondents incorrectly assert that the Notice of Appear charged Petitioner as inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) based on his grand theft and identity theft convictions. (Docket No. 8 at 3). Although the Form I-213 alleges that Petitioner "appeared to be inadmissible to enter the United States of America as a returning Lawful Permanent Resident pursuant to Section 212(a)(2)(i)(I) of the Immigration and Nationality Act (INA) due to his criminal convictions" (Docket No. 8-1 at 2), neither the Form I-213 nor the Notice to Appear mentions Petitioner's identity theft conviction.

Petitioner remains in ongoing removal proceedings. (Docket No. 8 at 3). Petitioner's immigration court hearing on Petitioner's motion to terminate, which was set for October 21, 2026, was continued to December 3, 2026. (Docket No. 11 at 2).

Since May 27, 2026, Petitioner has been detained at the Adelanto ICE Processing Center in Adelanto, California. (Docket No. 1 at ¶¶ 23, 26, 45; Docket No. 8 at 2; see https://locator.ice.gov/odls/#/results).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised a claim under the Due Process Clause of the Fifth Amendment (Docket No. 1 at 32-36), which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These

protections extend to noncitizens present in the United States. See e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. Petitioner is Not Subject to Mandatory Detention.

In the Answer, Respondents contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(A), as a noncitizen inadmissible for committing, being convicted of, or admitting the elements of a crime involving moral turpitude or an attempt/conspiracy to commit one. (Docket No. 8 at 2-4).

8 U.S.C. § 1226(c) subjects noncitizens convicted of enumerated crimes to mandatory detention. Denmore v. Kim, 538 U.S. 510, 513 (2003); see Calderon v. Noem, Case No. 2:25-cv-02136-LK-TLF, 2025 WL 3771194, at *2 (W.D. Wash. Nov. 20, 2025) ("[Section 1226(c)] mandated detention without bond for noncitizens convicted of specific, enumerated crimes, including aggravated felonies, drug trafficking, and crimes involving moral turpitude."). Section 1226(c) was amended by the Laken Riley Act, enacted on January 29, 2025, to expand the categories of noncitizens subject to mandatory detention; it provides for mandatory detention for a noncitizen who is inadmissible pursuant to certain provisions of 8 U.S.C. § 1182(a), which includes based on a noncitizen's conviction of, admitted commission of, or admitted commission of acts constituting the essential elements of "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime," 8 U.S.C. § 1182(a)(2)(A)(i)(I), and who "is

charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]" See Pub. L. No. 119-1, 139 Stat. 3 (2025) (amending 8 U.S.C. § 1226(c)(1)(E)).

Here, it is undisputed that Petitioner is charged as inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) based on his October 7, 2019 felony conviction for grand theft (a violation of Cal. Penal Code § 487(a)) in San Diego County Superior Court. (Docket No. 11-1). Although the Notice to Appear alleges that Petitioner was sentenced for his grand theft felony conviction to "44 months of prison, a $10[,]000 U.S. Dollars fine, and 4 years of parole or post-release community supervision" (Docket No. 11-1 at 1), the imposition of Petitioner's sentence for his grand theft and identity theft convictions was suspended for 3 years, and Petitioner was ordered to serve three years of formal probation and four days in jail, and was ordered to pay $13,528.00 in restitution. (Docket No. 1-2 at 1). It also is undisputed that on January 31, 2022, Petitioner's felony convictions were reduced to misdemeanors under Cal. Penal Code § 17(b)(3), and that on August 1, 2022, those convictions were dismissed under Cal. Penal Code § 1203.4. (See Docket No. 1 at 4-5, 17-18; Docket No. 8 at 3; Docket No. 9 at 4-5; see Docket No. 1-2 at 11-13).

Petitioner does not argue that a grand theft felony conviction (one of the offenses of which Petitioner was convicted) does not subject a noncitizen to mandatory detention under Section 1226(c). See Singh v. Warden, Case No. 1:26-cv-03213 DJC CKD, 2026 WL 1651044, at *2 (E.D. June 8, 2026) (finding that a noncitizen convicted of grand theft under Cal. Penal Code § 487(a) was convicted of a crime involving moral turpitude).[6] Petitioner also does not argue that he is not

---

[6] Since, as discussed above, Petitioner is not charged as inadmissible under Section 1182(a)(2)(A)(i)(I) based on his October 7, 2019 felony conviction for identify theft, the Court has

subject to mandatory detention under Section 1226(c) based on the August 2022 dismissal his grand theft conviction. (See Docket No. 1 at ¶ 43 [In August 2022, Petitioner also received relief under California Penal Code § 1203.4. Petitioner does not rely upon the § 1203.4 dismissal as eliminating the conviction for federal immigration purposes."]; Docket No. 9 at 2 ["Petitioner relies on the misdemeanor classification and the federal petty-offense exception, not on the premise that the August 2022 dismissal made his convictions disappear."]). Rather, Petitioner contends that, based on the fact that his grand theft felony conviction was reduced to a misdemeanor in January 2022, he qualifies for an express exception to inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I), specifically, 8 U.S.C. § 1182(a)(2)(A)(ii)(II) -- "Clause [1182(a)(2)(A)](i)(I)] "shall not apply to an alien who committed only one crime if" . . . "the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed)." -- and therefore is not subject to mandatory detention under Section 1226(c). (Docket No. 1 at ¶¶ 7, 43 ["[Petitioner's] principal criminal-law argument rests on the

---

no reason to address any of Petitioner's or Respondents' arguments regarding Petitioner's identity theft conviction. See Martinez Bermudez v. Andrews, Case No. 1:26-cv-05188-NW, 2026 WL 2921452, at *2 (E.D. Cal. Sept. 29, 2026) ("[W]here the Notice to appear placing the non-citizen in removal proceedings 'failed to charge or notify of an offense covered by § 1182(a)(2)' as a reason for inadmissibility, [Section] 1226(c)(1)(A) does not govern their detention.'") (citation omitted); Colmenares-Pinto v. Warden of Golden State Annex Ice Det. Facility, Case No. 1:26-cv-00812-DAD-SCR, 2026 WL 923804, at *2 (E.D. Cal. Apr. 6, 2026), report and recommendation adopted, 2026 WL 1430913 (E.D. Cal. May 21, 2026) ("The plan language of [Section] 1226(c)(1)(A) requires an administrative charge of inadmissibility by reason of having committed an offense covered in [Section] 1182(a)(2) as prerequisite to mandatory detention under that provision.").

independent January 22 § 17(b)(3) classification and the Ninth Circuit's treatment of that classification for purposes of the federal petty-offense exception."], 61-65; see Docket No. 9 at 2, 5-10)

As noted above, the Court ordered Respondents to file a Supplemental Answer addressing Petitioner's contention, but Respondents failed to do so. The Court construes Respondents' failure to contest Petitioner's contention as a concession to its validity pursuant to Central District of California Local Civil Rule 7-12.

Federal courts must decide cases based on the arguments the parties present. See United States v. Sineneng-Smith, 590 U.S. 371, 375–76 (2020); Greenlaw v. United States, 554 U.S. 237, 243 (2008). That rule follows from the party presentation principle: "In our adversarial system of adjudication . . . in both civil and criminal cases, in the first instance and on appeal . . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Sineneng-Smith, 590 U.S. at 375 (2020) (cleaned up). The Supreme Court has reminded the lower courts that they are "essentially passive instruments of government" who must adhere to the narrow questions raised by the parties. Margolin v. Nat'l Assoc. of Immigration Judges, 146 S. Ct. 1285, 1288 (2026) (citation omitted).

Respondents are represented by competent counsel with full access to all the relevant facts concerning Petitioner's detention, and they offered no factual or legal basis to reject Petitioner's contention. Respondents' failure to do so constitutes a forfeiture of the arguments they could have made in support of their position. See Martinez v. Sessions, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the opposing party] raised.").

/ / /

Accordingly, the Court finds that Petitioner is not subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(A).

**B. Petitioner is Entitled to Habeas Relief.**

Since June 1, 2016, Petitioner has been a LPR. (Docket No. 1 at ¶¶ 1, 26, 34; see Docket No. 8-1 at 2). On May 27, 2026, when Petitioner presented himself for lawful inspection at Los Angeles International Airport after returning from travel abroad, DHS detained Petitioner without a hearing. (Docket No. 1 at ¶¶ 1, 44-45; Docket No. 9 at 3). Since May 27, 2026, Petitioner has not received an individualized custody hearing before a neutral adjudicator. (Docket No. 1 at ¶¶ 1, 4; Docket No. 9 at 3).

The Court considers Petitioner's claim concerning the deprivation of his due process rights pursuant to Mathews. As an initial matter, the Court notes that Respondents in the Answer did not adequately address Petitioner's due process claim. (See Docket No. 8 at 5 ["[T]he Mathews factors weigh heavily in favor of the Government given this is Petitioner's first time in immigration detention, he has egregious criminal history, and the Government has a duty and right to keep him detained because he is subject to mandatory detention."]). As such, the Court finds Respondents' failure to be a concession. See Rojas v. Mullin, Case No. 2:26-cv-01437-FMO-MAA, 2026 WL 1105039, at *1 (C.D. Cal. Apr. 17, 2026) (granting habeas petition where "the court construes respondents' failure to address petitioner's due process claim as a concession; Soleimani v. Larose, Case No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims").

/ / /

/ / /

/ / /

Petitioner developed a substantial liberty interest in remaining out of custody based on the life he built in the United States since arriving more than ten years ago, including his status as an LPR. See, e.g., Tinoco v. Noem, 818 F. Supp. 3d 1141, 1152 ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, Case No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Moreover, LPR status "carries several important privileges: [H]e may remain in the United States indefinitely; he is free to work in this country; he may return to this country after a temporary absence abroad; and he has the privilege of establishing permanent residence in the United States." Saxbe v. Bustos, 419 U.S. 65, 72 (1974). By statute, individuals with LPR status "shall not be regarded as seeking an admission into the United States for purposes of the immigration laws" unless one of six conditions applies. 8 U.S.C. § 1101(a)(13)(C). These conditions include, for example, abandoning or relinquishing their LPR status, being absent from the United States for a continuous period in excess of 180 days, or engaging in illegal activity after having departed the United States. § 1101(a)(13)(C)(i)–(iii).

There is nothing in the record to support the revocation of Petitioner's LPR status or his detention pursuant to 8 U.S.C. § 1225. Although Petitioner admittedly was absent from the United States for more than 180 days (Docket No. 1 at ¶¶ 10, 44; Docket No. 9 at 3), Respondents do not mention Petitioner's absence from the

United States or attempt to address Petitioner's arguments about his absence from the United States (see Docket No. 1 at ¶¶ 10-12, 35, 56-57, 74; Docket No. 9 at 3).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). And where a petitioner has not received a hearing or other process prior to the revocation of his liberty – as Petitioner alleges – "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up). As Petitioner argues (Docket No. 1 at ¶¶ 89-90), the risk of an erroneous deprivation is heightened by the discrepancies between Petitioner's actual sentence for his October 7, 2019 convictions and what was stated in the Notice to Appear. (Docket No. 1 at ¶¶ 4, 6, 38, 46-47, 65; see Docket No. 1-2 at 1-4; Docket No. 8 at 3; Docket No. 11-1 at 1).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at, 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that some other exigency required his immediate arrest and detention at Los Angeles International Airport on May 27, 2026.

In light of Petitioner's substantial liberty interest, his arrest by immigration authorities on May 27, 2026, without a hearing, violated his procedural due process

rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.") (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Respondents have offered no reason as to why the government should be able to revoke Petitioner's status as a LPR or to detain Petitioner, who has developed a significant liberty interest during his years in this country and likely poses no danger to his community or risk of flight, without first providing him with notice and opportunity for a hearing before a neutral adjudicator.

Accordingly, the Court concludes that the government's arrest and detention of Petitioner on May 27, 2026, without adequate pre-detention process, violated his right to procedural due process under the Fifth Amendment.

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).

The appropriate remedy in this case is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on whatever conditions may have been previously imposed. See e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting

such relief); Jasbin v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLTEPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

In sum, the Court concludes that Petitioner is entitled to habeas relief on his claim that Respondents violated his right to procedural due process under the Fifth Amendment, and therefore grants the Petition.[7] Petitioner is entitled to immediate release from custody based on the violation of his procedural due process rights, as explained above.

## IV.

## ORDER

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) that a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Jinge Wang (A# 206-990-534) from custody on the same conditions (if any) as he was subject to at the time of his arrest and detention by Respondents, and the return of all property confiscated from him during his arrest and processing into detention; (3) that Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them are enjoined from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) that

[7] The Court's determination that Petitioner is entitled to habeas relief on his due process claim renders it unnecessary for the Court to address the other claims alleged in the Petition (see Docket No. 1 at 36-40).

Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: November 25, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE